United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 26, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-30687
_____

In The Matter Of:  MARY T. OSBORNE,

Debtor.

MARY T. OSBORNE,

Appellant,

versus

HOMESIDE LENDING, INC.,

Appellee.
_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 02-CV-1178-B
_____

Before JOLLY, DUHÉ, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case presents a dispute between Mary T. Osborne, a homeowner, and Homeside Lending ("Homeside"), a mortgage lender, about payments that Osborne was to make directly to Homeside in accordance with her Chapter 13 bankruptcy plan.  After an alleged default, Homeside secured a judgment that permitted Homeside to foreclose on Osborne's home.  We vacate that judgment, and remand for further proceedings.

I

Mary Osborne filed for bankruptcy on August 30, 1999.  In accordance with her bankruptcy payment plan (the "Plan"), a portion

of her wages was assigned to a bankruptcy trustee (the "Trustee") for disbursement to creditors, while Osborne was to continue making regular mortgage payments to Homeside Lending -- including the payment due the next day for September 1999. Osborne, thinking that the September 1999 payment was included in and discharged by the Plan, did not make that particular payment, but did send checks for October, November, and December. The Plan was confirmed, without objection by Homeside, on December 12, 1999.

Yet on February 4, 2000, Homeside filed a Motion for Relief from the Stay protecting Osborne's house ("First Motion"), claiming Osborne was four payments in arrears. On February 28, Osborne's then-attorney, Stephen Peters, filed an objection explaining why Osborne had missed the September payment (one payment not four) and expressing an intent to amend the Plan to include the post-petition September arrearage. The hearing on the motion was twice continued to allow Peters to file a modified bankruptcy plan. On April 19, in Osborne's absence pursuant to the court's permission, Bankruptcy Judge Louis M. Phillips granted the motion and lifted the stay because Peters had never filed the modified plan. Upon learning of this development, Osborne fired Peters.

On August 10, 2000, Osborne filed a pro se motion to rescind the order lifting the stay, and, after Homeside neither responded nor appeared, the court heard the motion on September 13. Osborne showed that her October through December checks had all been cashed

2

before Homeside's First Motion. She also showed that Homeside received but sent back her checks for January, February, and March, the lender claiming that these were partial payments -- apparently based on its claim that there was one month's arrearage -- which it did not want to accept lest they be construed as waiver of its right to a greater amount. Homeside also had asked Osborne to stop making payments (checks Homeside was refusing to cash) because her checks might get lost. Osborne complied with this request, but showed the court that her checking account could cover all payments theoretically due to that time (including the returned checks).

On September 13, 2000, the court granted Osborne's August 10 motion, vacated its previous order, and noted that FED. R. CIV. P. 60(b) also justified relief from judgment (as a result of excusable neglect from problems with Peters, and perhaps newly discovered evidence). The court also found that the First Motion recited an incorrect amount of default (on four payments rather than one), and so Osborne's refusal to sign a consent order proposed by Homeside was justified. In the September 13 order, Judge Phillips required Osborne to: 1) pay the Trustee, within five days, eight months worth of payments (January-August 2000); 2) file a modified plan to include the September 1999 payment plus $650 in attorney fees; 3) pay the September 2000 payment to the Trustee, to be held as a component of the post-petition payments for Homeside's account. Osborne complied with the order, except that, on advice of the Trustee, she sent the September 2000 payment directly to Homeside.

3

Soon, confusion was again in the driver's seat. On April 24, 2001, Homeside filed another Motion for Relief from Stay ("Second Motion"), alleging three months' arrearage and asking to lift the stay without FED. R. BANKR. P. 4001(a)(3)'s ten-day waiting period. On June 25, Osborne filed an objection, indicating that she had made all required payments as per the Plan and as required by Judge Phillips's order. The court held a hearing on June 27, where Osborne's current attorney, Aaron McGee, first appeared but where Homeside was absent. Osborne presented evidence of payment (certificates of mailing, cashed checks, carbon duplicates) for September 2000 through June 2001. The September 2000 payment had been sent back, as Homeside's counsel, Stacey Wheat, stated that this payment had been provided for through the Plan. Osborne also testified that Homeside had informed her that the April, May, and June 2001 checks were not cashed but had been sent to Wheat, and that the delay between receipt and cashing of checks had generated a computer determination of default.

On June 28, in the face of this unrefuted evidence, the court dismissed the Second Motion with prejudice concerning the allegations of missed payments due through June 2001 ("June 28 Order").

On July 9, 2001, Homeside filed a motion for rehearing of this Second Motion (or new trial), alleging that it had missed the June 27 hearing because the date had not been calendared by an employee missing from work. Homeside alleged that representations of

4

Osborne's account being current were inaccurate, and that payments were due for February through July 2001. On July 17, Homeside filed another motion for rehearing (or new trial). Osborne filed an objection, stating first that Homeside's motions were untimely, having been filed more than ten days after the judgment. Osborne also attached the evidence of payment for April-June 2001, and a letter explaining why these checks could have been cashed without waiver of any other rights. Osborne also presented certificates of mailing for July and August 2001.

Wheat then contacted McGee to negotiate a settlement, and the parties signed a consent order (the "Consent Order") that was approved by the court on August 23, 2001. By the terms of the Consent Order, Osborne was credited with $1,569 (for checks Wheat had "found" during negotiations) and was to make four payments of $120.33 to cure the remaining post-petition arrearage of $481.32 (representing the September 1999 payment). The Consent Order also contained a "drop dead" clause, which modified the stay and allowed Homeside to obtain an ex parte order enforcing its security interest in Osborne's home upon presentation of an affidavit of non-payment if any monthly installment (beginning with September 2001) was not paid within 30 days of its due date.[1]

---

[1]Osborne claims that her Fourteenth Amendment and Bankruptcy Code § 362(d) rights were violated when she was not given notice and a hearing before the bankruptcy court lifted the stay protecting her home, per the "drop dead" clause. Yet there was nothing unusual about the "drop dead" clause here, and Mendoza recognized such a mechanism as a valid negotiation tool and

Per the Consent Order, Osborne cured the $481.32 arrearage in four installments that accompanied her regular payments for August-December 2001. She also sent in regular payments for January-September 2002 (as well as a $25 late fee for January). For some reason that is not clear from the record, Homeside never negotiated the three checks totaling $1,569 -- which had been credited in the Consent Order -- nor did it request a new $1,569 payment.

The continued confusion is so confounding that we must assume that minds were completely disengaged. On April 24, 2002, Wheat filed an Affidavit of Default and Order Lifting Automatic Stay (the "Affidavit"), swearing that Osborne had failed to make the Consent Order payments (even though the Consent Order acknowledged the payments), and that the February 2002 payment was overdue (even though Osborne had apparently sent each payment to Homeside). On May 9, Judge Douglas D. Dodd, who had replaced Judge Phillips in the case, signed an order ("Dodd's Order") lifting the stay on the basis of the Affidavit, which order was served on McGee by first class mail. On May 23, Homeside returned Osborne's January 2002 check (and late fee).

specifically authorized its continued use, even without a debtor's consent. Matter of Mendoza, 111 F.3d 1264, 1269 (5th Cir. 1997). Further, § 362 does not preclude the inclusion of "drop dead" clauses in bankruptcy court orders modifying stays. Id. at 1270 (citing U.S. v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989)). Finally, Osborne agreed to the inclusion of the clause in the Consent Order. Thus, it is clear that the bankruptcy court did not abuse its discretion in enforcing the Consent Order's drop dead clause.

6

McGee apparently did not receive Dodd's Order until some time later (after the 10-day period specified for appeal) because of a separation from his wife and his lack of a business address. On August 22, McGee filed a motion to vacate Dodd's Order, attaching a memorandum of facts controverting the Affidavit and alleging that all payments had been made. Homeside filed an opposition on September 5, urging untimeliness, Osborne's default of $1,569, and the pending sheriff's sale of Osborne's home.

At a motion hearing on September 17 (the "September 17 Hearing"), Osborne requested relief for excusable neglect and misrepresentation regarding the default. The court was told of McGee's separation and petition for divorce leading to his effective lack of notice, and Osborne presented evidence of all previously described payments. (Apparently, the payments sworn to be in default had all been cashed by the time of the Affidavit.) Wheat stated that she had returned the three checks totaling $1,569 to Osborne; Osborne denied receiving the checks, and Wheat did not produce any evidence of mailing.[2] The court denied Osborne's motion on October 30, citing the unreasonableness of McGee's three-month delay and evidence of default.

Osborne appealed the bankruptcy court's order on November 8. On June 12, 2003, the district court issued a final judgment (on the briefs) affirming the bankruptcy court's decision to deny

---

[2]Recall that the Consent Order acknowledged payment of the $1,569 at issue.

7

Osborne's motion to vacate Dodd's Order.  Osborne filed a timely notice of appeal.

## II

We review actions taken by the district court in its appellate role for abuse of discretion.  In Re CPDC Inc., 221 F.3d 693, 698 (5th Cir. 2000).  A district court abuses its discretion in reviewing bankruptcy courts when its decision is based on an erroneous view of the law.  Id.  The district court in this case cited "essentially the reasons set forth by the Bankruptcy Judge."  Thus, we review the legal conclusions of the bankruptcy court de novo, Matter of Clark Pipe & Supply, Inc., 893 F.2d 693, 697-98 (5th Cir. 1990), and its findings of fact for clear error.  FED. R. BANKR. P. 8013; Matter of Webb, 954 F.2d 1102, 1003 (5th Cir. 1992).

Osborne argues that the district court's judgment should be vacated because the bankruptcy court erred in two ways: (1) it clearly erred in its findings of fact at the September 17 Hearing; and (2) it abused its discretion in denying Osborne's motion to vacate Dodd's Order.[3]  We take up these issues in turn.

---

[3]Osborne also argues that the district court abused its discretion by failing to rule on the admissibility of certain documents presented by her counsel, McGee, at the September 17 Hearing.  Homeside disputes whether McGee moved to offer the proof of Osborne's payments, such as cashed checks and certificates of mailing, into evidence in the first place.  Yet McGee stated a desire to introduce the documents at issue and handed them to court personnel, and Osborne proceeded to authenticate and discuss the documents in her testimony, to which Homeside did not object; Homeside even cross-examined Osborne about the documents.  The district court neither admitted nor declined to admit the proffered evidence, and it cannot be faulted for not ruling on a non-existent

8

We first examine Osborne's argument that the bankruptcy court clearly erred in its findings of fact at the September 17 Hearing, where the court denied Osborne's request for relief from the enforcement of the Consent Order's "drop dead" clause (granted ex parte in Dodd's Order).

Osborne argues that the bankruptcy court's finding of default in the amount of $1,569 contradicts the June 28 Order, which dismissed with prejudice allegations of default on payments due through June 2001 -- and which preceded the Consent Order. The June 28 Order acknowledged that Osborne had met her Plan obligations by sending Homeside the checks. Any default was thus caused by Homeside's refusal to negotiate the checks it had in its possession. Osborne also emphasizes that the Consent Order explicitly acknowledged (again) that "[t]he Debtor has made a payment of $1,569."

Homeside's arguments to the contrary are unconvincing; the Consent Order -- including its acknowledgment that Osborne made the payment on which the court found her in default -- is binding on both parties. It seems disingenuous to claim that Osborne did not pay what she owed when it is Homeside that has a history of not

---

motion to admit. Yet the evidence was offered, authenticated, and cross-examined, and Homeside has clearly waived any objection to its implicit admission into the record. See, e.g., U.S. v. Fuentes, 432 F.2d 405, 409 (5th Cir. 1970). As such, we consider the evidence to be part of the record.

cashing and returning valid checks. Homeside simply cannot refuse to negotiate Osborne's checks, then blame her for knowing they were not negotiated, and call it a default.[4]

As Osborne sent checks in the correct amount due and presented evidence that she had sufficient funds in her bank account to cover these payments -- and as the binding Consent Order states that she made the required payment -- the bankruptcy court clearly erred in its finding of default.[5] Yet this holding does not decide the appeal because Homeside argues that the finding of default was not timely challenged by Osborne.

B

We thus take up the question of whether the bankruptcy court abused its discretion in denying Osborne's FED. R. CIV. P. (60)(b) motion to vacate Dodd's Order.[6] Motions under Rule 60(b) must be

---

[4]At oral argument, Homeside explained that it did not cash Osborne's checks because of its policy of accepting only *certified* checks from debtors with a delinquency; yet there is no indication that this fact was ever conveyed to Osborne. This excuse, however, is beside the point; Homeside's agreement to the Consent Order indicates that it already accepted the payment in question.

[5]Osborne also argues that the bankruptcy court clearly erred in finding that Homeside had returned checks totaling $1,569, and that Homeside would rather have Osborne's money than sell her home at a sheriff's sale. The record shows, however, that the court did not make these findings, so these points of error are meritless.

[6]The relevant portion of Rule 60(b), made applicable to bankruptcy cases by Rule 9024 of the Bankruptcy Rules, reads as follows:

> On motion and upon such terms as are just, the
> court may relieve a party or a party's legal
> representative from a final judgment, order,

made "within a reasonable time," unless good cause can be shown for the delay. <u>Pryor v. U.S. Postal Svc.</u>, 769 F.2d 281, 287-88 (5th Cir. 1985). Moreover, "Rule 60(b) relief will be afforded only in 'unique circumstances.'" <u>Id</u>. at 287 (citing <u>Wilson v. Atwood Group</u>, 725 F.2d 255, 257-58 (5th Cir. 1984) (en banc)). This "good cause," and these "circumstances," must necessarily be evaluated on a case-by-case basis. <u>See</u>, <u>e.g.</u>, <u>Ashford v. Steuart</u>, 657 F.2d 1053, 1055 (9th Cir. 1981) ("What constitutes a 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for the delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.").

Osborne argues that two main factors should have left no choice to the bankruptcy court but to grant her motion to vacate: 1) a legal conclusion of default unsupported by evidence (which we have already held to be the case, <u>supra</u>); and 2) the loss of her home being at stake. Further, she contends that the delay in filing the motion was caused by "excusable neglect" under Rule

> or proceeding for the following reasons: (1) mistake, 1) mistake, inadvertence, surprise, or excusable neglect; . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party; . . . (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) [and] (3) not more than one year after the judgment, order, or proceeding was entered or taken.

60(b)(1), namely McGee's not being aware of Dodd's Order due to some unfortunate personal circumstances.  In addition, Homeside's pattern of returning checks and then claiming in the Affidavit that payment was never received could constitute "misrepresentation" under Rule 60(b)(3).  Finally, Osborne suggests that her repeated good faith attempts to meet her obligations, justify relief from the bankruptcy court's too-harsh judgment under Rule 60(b)(6).

Homeside replies that McGee's excuses are insufficient to constitute "excusable neglect" such that the motion was filed within a "reasonable time" after the judgment per Rule 60(b). Marcaida v. Roscoe, 569 F.2d 828, 830 (5th Cir. 1979) (counsel's preoccupation with other matters -- including father's death, own ill health, and the holidays -- does not dispense with the necessity to comply with court rules) (citing U.S. v. Bowen, 310 F.2d 45, 47 (5th Cir. 1962)).

A decade ago, the Supreme Court addressed whether an attorney's inadvertent failure to file within the established deadline can be "excusable neglect" within the meaning of FED. R. BANKR. P. 9006(b)(1)[7], and defined "excusable neglect" as follows:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's

---

[7]This rule sets forth the calculation of time in bankruptcy proceedings, and the holding is illustrative of the (scant) precedent in this area.

12

> omission.  These include . . . the dangers of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and <u>whether the movant acted in good faith</u>.

<u>Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 385 (1993) (emphasis added).

One basic fact strongly supports Homeside:  McGee did not notify the court of his address change, and he admitted that he received Dodd's Order in the second or third week of May 2002. Under this reading, even if McGee did not see the Order within the ten-day appeal period, lack of notice cannot be an excuse for not filing a motion until August.  It would normally be within the court's clear discretion to find a three-month delay unreasonable.

Yet all other equities weigh in Osborne's favor:  Osborne cured the initial (and inadvertent) post-petition arrearage of one mortgage payment, sent all other payments as they became due, and otherwise complied with all aspects of the Plan and the Consent Order -- and she presented evidence to prove all this.  Homeside, meanwhile, asked for a declaration of default and enforcement of the drop dead clause on faulty evidence contrary to the Consent Order.  Although we are not prepared to say Homeside acted in bad faith, it acted recklessly and exercised faulty judgment in asking for a default when the operative Consent Order acknowledged receipt of the very payment at issue.  Any careful lawyer would have known

13

that there was no basis for default with respect to the $1,569 at issue until and unless the Consent Order -- which acknowledged payment -- was set aside, and it never was.

Moreover, the consequence of a ruling adverse to Osborne is the loss of her home, while the opposite ruling implies a resolution to which both parties should be amenable: the curing of the arrearage and continuation of payments under the Plan and the Consent Order. Under the circumstances present here, we consider this case to be highly exceptional, and conclude that the bankruptcy court abused its discretion in denying a 60(b)(6) motion for "any other reason justifying relief from the operation of the judgment."

### III

For the foregoing reasons, the judgment of the district court is VACATED, and the case is REMANDED to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

VACATED and REMANDED.

14