**In re Yvonne HUBBARD, Florencio Posadas, Monicha O'Neal, Elias Salazar and Diane Rocha Salazar, Nannette Dawn Beard, Putative Debtors.**

**Nos. 05–95017, 05–95097 to 05–95099, 05–95119.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Nov. 16, 2005.

See also 333 B.R. 373, 2005 WL 3061939.

James B. Heston, The Heston Law Firm PC, Houston, TX, for Debtors.

*ORDER STRIKING PETITIONS AND ORDERING DEBTORS' COUNSEL TO SHOW CAUSE WHY COUNSEL SHOULD NOT RETURN FEES AND EXPENSES*

MARVIN ISGUR, Bankruptcy Judge.

Each of the above referenced putative debtors has filed a motion seeking an extension of time by which they must obtain the credit counseling required by 11 U.S.C. § 109(h). None of the putative debtors have satisfied the statutory requirements for the requested extension. Because none of the putative debtors were eligible to file bankruptcy as of the date on which their respective bankruptcy petitions were filed, the petitions are stricken.

### Background

On October 17, 2005, most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. Among those provisions is a requirement contained in § 109(h) that prospective debtors obtain credit counseling. That section provides:

(1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis.

(2)(A) Paragraph (1) shall not apply with respect to a debtor who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved nonprofit budget and credit counseling agencies for such district are not reasonably able to provide adequate services to the additional individuals who would otherwise seek credit counseling from such agencies by reason of the requirements of paragraph (1).

(B) The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in subparagraph (A) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter. Notwithstanding the preceding sentence, a nonprofit budget and credit counseling agency may be disapproved by the United States trustee (or the bankruptcy administrator, if any) at any time.

(3)(A) Subject to subparagraph (B), the requirements of paragraph (1) shall not apply with respect to a debtor who submits to the court a certification that—

(i) describes exigent circumstances that merit a waiver of the requirements of paragraph (1);

(ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5–day period beginning on the date on which the debtor made that request; and

(iii) is satisfactory to the court.

(B) With respect to a debtor, an exemption under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

(4) The requirements of paragraph (1) shall not apply with respect to a debtor whom the court determines, after notice and hearing, is unable to complete those requirements because of incapacity, disability, or active military duty in a military combat zone. For the purposes of this paragraph, incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities; and "disability" means that the debtor is so physically impaired as to be unable, after reasonable effort, to participate in an in person, telephone, or Internet briefing required under paragraph (1).

11 U.S.C. § 109(h).

The Court will interpret § 109(h) in accordance with traditional principles. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.' " *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

The Court sees no ambiguity in the statute. Subparagraph (1) requires prospective debtors to receive credit counseling, subject to the exceptions in subparagraphs (2) and (3). Subparagraph (4) makes subparagraph (1) inapplicable to certain debtors (i.e., those suffering from incapacity, disability, or active military duty in a military combat zone).

The Hubbard petition was filed on October 26, 2005 and sought relief under chapter 13. The Posadas, O'Neal, Salazar and Beard petitions were each filed on November 1, 2005 and sought relief under chapter 13. The putative debtors are all represented by The Heston Law Firm, P.C.

None of the putative debtors obtained pre-filing credit counseling. Each sought an extension of the credit counseling deadline.

Because the credit counseling requirement is new, the Court issued its November 8, 2005 order giving the putative debtors significant detail regarding

the statute's requirements. One of the fundamental requirements of the statute is that an extension of the credit counseling deadline may only be obtained if a debtor files a certification with the Court that contains certain information. Hubbard's initial motion did not reference any certification. On November 10, 2005, Hubbard filed her second motion with the following language: "Debtor(s) would respectfully certify to this Court...." The motion is signed by her counsel. Posadas, O'Neal, Salazar and Beard each filed motions that contained the same language and signature as the second Hubbard motion.

The Court's November 8, 2005 order was explicit about the requirements of a certification—and the consequences of failing to file a certification:

> The Debtors' motions uniformly fail to meet the certification requirements of 11 U.S.C. § 109(h)(3). The Court declines to read the word "certification" to mean merely that a motion is filed that makes certain allegations. Congress obviously had a meaning that extended beyond the mere filing of a motion.
>
> The fact that some of the motions say that they are certifications does not make them so.
>
> Congress has defined what type of document will suffice when a law requires that a matter contain a certification:
>
> "Whenever, under any law of the United States ... any matter is required or permitted to be supported, evidenced, established or proved by the sworn declaration, verification, *certificate*, ... [the following form may be used]:
>
> ...
>
> (2) If executed within the United States, its territories or commonwealths: "I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." "
>
> 28 U.S.C. § 1746.
>
> The applications filed by the debtors do not constitute certifications under the law. Until certifications are filed, the Court will not consider whether the factual allegations made in the applications satisfy the requirements of § 109(h)(3).

None of the putative debtors have filed a certification that complies with the law. Instead, each has now filed a certification that they have received post-petition credit counseling.

Section 109(h)(3)(A) affords a temporary exemption from the pre-petition credit counseling requirements of subparagraph (1) only to those who file a satisfactory certification with the Court. An individual must receive a temporary exemption from the Court in order to receive an extension under subparagraph (3)(B). If the temporary exemption is allowed, the individual may receive credit counseling post-petition.

The putative debtors in these cases neither obtained pre-petition credit counseling nor filed the requisite certifications. Section 109 of the Bankruptcy Code defines eligibility to be a debtor. Because the putative debtors failed to satisfy the requirements of § 109(h), they were ineligible to be debtors as of their respective petition dates.

### Factual Allegations

As set forth above, the putative debtors failed to file certifications as required by § 109(h). Without an appropriate certification, the putative debtors may not invoke the exception set forth in § 109(h)(3). Nevertheless, for the purpose

of completeness, the Court evaluates the factual allegations contained in the motions in the context of the statute's requirements for obtaining an extension of the credit counseling deadline. As set forth in this Court's November 8, 2005 order, individuals seeking an exemption under § 109(h)(3) must file a certification that:

1. Describes exigent circumstances that merit a waiver of the credit counseling requirement;

2. States that the debtor requested credit counseling services from an approved agency, but was unable to obtain the services during the five-day period beginning on the date on which the debtor made the request; and

3. Is satisfactory to the Court.

11 U.S.C. § 109(h)(3).

The putative debtors each seek a determination by the Court that exigent circumstances exist. The following summarizes the allegations contained in the debtors' motions:

| Putative Debtor | Exigent Circumstance Alleged |
| --- | --- |
| Hubbard | Automobile had been repossessed and needed to reclaim car. |
| Posadas | Home was posted for foreclosure on November 1, 2005 and needed to save home from foreclosure. |
| O'Neal | Home was posted for foreclosure on November 1, 2005 and needed to save home from foreclosure. |
| Salazar | Home was posted for foreclosure on unspecified date and needed to file bankruptcy to stop the foreclosure. |
| Beard | Ms. Beard was a defendant in a sequestration suit over her vehicle and "vehicle was in danger of being repossessed." |

 With respect to the Posadas, O'Neal and Salazar matters, the Court finds that each motion alleges exigent circumstances that satisfy the requirements of § 109(h)(3)(A)(i). When a prospective debtor faces a loss of the family home unless immediate relief is granted under the Bankruptcy Code, exigent circum-

stances exist. *See, e.g., In re Osborne*, 379 F.3d 277, 284 (5th Cir.2004).

 With respect to the Hubbard matter, exigent circumstances also existed. Ms. Hubbard's car had already been repossessed and failure to obtain immediate relief was likely to result in a permanent loss of the car. There was no evidence offered that Ms. Hubbard had a second car or any alternative means of getting to and from work. An individual facing the immediate and permanent loss of her sole means of transportation generally faces exigent circumstances that satisfy the requirements of § 109(h)(3)(A)(i).

 With respect to the Beard matter, the allegations in the motion are insufficient to satisfy the "exigent circumstances" requirement. Further, no evidence was offered at the November 15, 2005 hearing to bolster the allegations. Almost every debtor that seeks relief in the bankruptcy court has a problem looming in the future. The motion filed by Ms. Beard does not allege the date of the upcoming sequestration hearing, the defenses to the sequestration, or any other fact that would allow the court to determine the exigency of the matter. Congress has required that the exigent circumstances be sufficient to merit a waiver of the pre-petition credit counseling requirement. Without more, Ms. Beard's allegations do not satisfy the statute's requirement.

 As set forth in the Court's November 8, 2005 order, exigent circumstances alone do not authorize the Court to waive the requirement that credit counseling be obtained before the petition is filed. A debtor must *additionally* demonstrate that "the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5–day peri-

od beginning on the date on which the debtor made that request...." 11 U.S.C. § 109(h)(3)(A)(ii).

The Posadas, O'Neal, Salazar and Beard motions each allege:

Debtor has, by and through counsel, requested counseling from an approved agency but was unable to obtain services during the five-day period following the date upon which such request was made. Counsel for Debtor has inquired with each of the approved counseling agencies in the Southern District of Texas and has been unable to secure approved counseling for the Debtor.

The Hubbard motion additionally alleges:

In the weeks immediately preceding and following October 17, 2005, Counsel for the Debtor made their own several attempts to contact all four of the approved credit counseling services only to obtain messages that such services were busy. Counsel for the Debtor was notified that calls and electronic messages would be returned at a later time.

At the hearing on November 15, 2005, the putative debtors' counsel, Damian Abreo, testified that on October 19, 2005, he personally inquired into the availability of credit counseling from the companies on the approved list of credit counseling agencies provided by the United States trustee.[1] Mr. Abreo applied to at least three of the agencies as part of his general inquiry. He testified that the agencies were unavailable to assist him at that time.

 The United States trustee claims that the debtor himself must obtain the required credit counseling and that inquiries by a debtor's attorney are insufficient to satisfy § 109(h)(3). The Court

finds that an attorney may act as a debtor's agent and request credit counseling services on behalf of a debtor. Such a request may satisfy the requirement in 11 U.S.C. § 109(h)(3)(A)(ii) if the attorney requested the services on behalf of a particular debtor. However, general inquiries by an attorney concerning the availability of credit counseling—like those made by Mr. Abreo—are insufficient to satisfy the requirement of § 109(h)(3)(A)(ii) as to each individual debtor that the attorney may represent. The United States trustee is charged with the responsibility to determine whether credit counseling services are not generally able to provide adequate services to individuals who seek their services in order to meet the requirements of § 109(h)(1). 11 U.S.C. § 109(h)(2).

 Of course, the United States trustee's determination may be challenged. As part of the hearing conducted by this Court on November 15, 2005, the trustee was required to demonstrate that it had complied with its duties. Moreover, an individual debtor may allege that she was unable to obtain the services, even though the trustee had found them to be available. 11 U.S.C. § 109(h)(3)(A)(ii) explicitly authorizes a debtor to certify that she "requested credit counseling services from an approved non profit and credit counseling agency, but was unable to obtain the services...." However, a debtor may not rely on her counsel's general determination that the services are not available.

Furthermore, the United States trustee challenges the accuracy of the putative debtors' allegations. At the hearing on November 15, 2005, the United States trustee presented evidence detailing the availability of credit counseling to other

---

[1] Mr. Abreo testified that his law firm closed its office on October 19, 2005 in order to adopt internal procedures to implement the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 that became effective on October 17, 2005.

debtors who filed petitions after October 17, 2005. The evidence shows that 79 chapter 13 cases were filed between October 17, 2005 and November 7, 2005 by debtors represented by counsel. Of those 79 debtors, 53 filed certifications evidencing that they received credit counseling prior to filing a petition. Only six debtors filed a motion requesting an extension from the Court. The Heston Law Firm filed five of these motions. In the remaining case, the debtor received credit counseling prior to filing a petition but filed a motion requesting an extension to file the certification. This evidence strongly suggests that credit counseling is generally available in the Southern District of Texas.

▬ Mr. Abreo testified that Hubbard, Posadas, O'Neal and Beard contacted his law firm immediately preceding a foreclosure or sequestration hearing and that each of these putative debtors could not wait four or five days to file their petition. The fact that these putative debtors could not wait to file their petitions does not eviscerate the requirement in § 109(h). They must obtain credit counseling prior to filing a petition or receive an exemption from the requirement after certifying that they unsuccessfully requested credit counseling services.

▬ Based on Mr. Abreo's testimony that Springboard, an online credit counsel-

ing agency, could have offered credit counseling four to five days after his request and further evidence presented by the United States trustee, the Court finds that these putative debtors could have obtained credit counseling within five days of making a request and prior to filing their petitions. The record further reflects that Hubbard, Posadas, O'Neal and Beard did not independently contact a credit counseling agency until *after* their petitions were filed. Section 109(h) requires that a debtor either receive or unsuccessfully request credit counseling prior to filing a petition in order to be eligible as a debtor.[2] These debtors failed to do so.[3]

The evidence shows that the Salazars contacted The Heston Law Firm nearly 10 days prior to the scheduled foreclosure on their home. Mr. Abreo also testified that, prior to filing the Salazar's petition, Mr. Abreo contacted Money Management by telephone. Money Management required advance payment with a credit card. The Salazar's did not have a credit card. Accordingly, Mr. Abreo concluded that Mr. Salazar would have been unable to utilize the agency because he could not make the required payment by telephone. It is unclear whether Mr. Abreo or the Salazars made a specific request that Money Management provide services to the Salazars. The Court recognizes that Mr. Abreo's

2. Subparagraph (3)(A)(ii) does not explicitly require that the request be made prior to filing a petition. However, the plain language of subparagraph (1) evinces Congress' intent that such requests be made prior to filing a petition. Subparagraph (1) states that "an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual," received credit counseling. The plain language of § 109(h)(1) requires that an individual receive credit counseling before he may be a debtor under the Bankruptcy Code. Subparagraph (3) is an exception to subparagraph (1). In-

terpreting the exception in subparagraph (3)(A)(ii)—that requires an individual to certify that he was unsuccessful in obtaining credit counseling—to allow an individual to wait to request credit counseling until after becoming a debtor would be demonstrably at odds with the intent of Congress.

3. As discussed above, Mr. Abreo's general inquiries into the availability of credit counseling on and around October 19, 2005 were not specific to these putative debtors and are therefore inadequate to satisfy § 109(h)(3)(A)(ii).

request may be sufficient under § 109(h)(3)(A)(ii) if it had been in the form of a proper certification.

The United States trustee's response explains that seven separate credit counseling agencies are reasonably able to provide adequate services to debtors in the Southern District of Texas. The United States trustee further states that one of these approved agencies has five different physical locations within the Houston area where a debtor may receive in-person credit counseling. Although Mr. Salazar may have been able to receive services from a separate credit counseling agency online or in person had he made further requests, such an effort is not required by the statute. Section 109(h)(3)(A)(ii) simply requires that "the debtor requested credit counseling services from *an* approved nonprofit budget and credit counseling agency...." 11 U.S.C. § 109(h)(3)(A)(ii) (emphasis added).

■■■ As with other portions of the new Act, the Court applies the plain language of the statute to determine whether a prospective debtor must scour the field before determining that credit counseling is unavailable. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The dictates of *Ron Pair* require the Court to determine whether the plain language of the statute will produce a result "demonstrably at odds with the intentions of its drafters." *Id.* In this case, the Court finds that the plain language of the statute is not demonstrably at odds with Congressional intent.

■■■ To be sure, Congress wants prospective debtors to obtain pre-petition credit counseling. However, Congress established an organized framework with respect to the availability of the counseling. In recent years, more than 1,000,000 individual bankruptcies have been filed annu-ally. Congress apparently chose not to impose the inefficiency of requiring each individual to investigate the availability of credit counseling services. Instead, § 109(h)(2) places the burden of determining availability of counseling services on the United States trustee. Prospective debtors must contact a provider that has already been approved by the United States trustee. If that provider cannot provide the services during "the 5–day period beginning on the date on which the debtor made that request" (§ 109(h)(3)(A)(ii)) then the prospective debtor has two choices: (1) contact additional providers and obtain the services pre-petition; or (2) if the debtor faces exigent circumstances, elect to file an appropriate certification. In the latter instance, the debtor receives a temporary exemption, but still must receive post-petition credit counseling services. Because this creates an entirely rational framework and comports with the plain language of the Act, the Court finds that § 109(h)(3)(A)(ii) only requires a prospective debtor to contact a single agency before filing a certification under § 109(h)(3).

Although the foregoing interpretation heightens the importance of the United States trustee's approval process over the alternate interpretation, the Court finds that Congress made that rational choice and placed the burden on the United States trustee. If the trustee fails to assure that agencies on its approved list will provide services within five days of the request, the Court declines to place an additional burden on prospective debtors to scour the field for other providers.

■■■ The final requirement in 11 U.S.C. § 109(h)(3)(A) is that any certification must be "satisfactory to the court." As set forth above, the Court does not believe that the motions filed by any of the

debtors are "certifications." To the extent that they are certifications, they are not satisfactory to the Court. The Court's November 8, 2005 order set forth the requirements of 28 U.S.C. § 1746. Those requirements have not been met. In addition, the Court advised the debtors that certifications should contain sufficient specificity. A certification should normally "set forth the fact underlying any alleged exigent circumstances, the date(s) on which the debtor requested credit counseling, which agencies were contacted to render the services, why the debtor believes that the services could not be obtained before the filing, and when the services are reasonably likely to be obtained." *In re Hubbard,* 332 B.R. 285 (Bankr.S.D.Tex. 2005). The debtors have failed to set forth the level of specificity required for a meaningful review by the Court. Accordingly, the Court finds that the certifications are not "satisfactory to the court" as required by 11 U.S.C. § 109(h)(3)(A)(iii).

### Legal Effect of Non–Compliance

■■■ 11 U.S.C. § 301 provides that a voluntary case is "commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." Accordingly, the plain language of § 301 does not provide for the commencement of a voluntary case by an entity that may not be a debtor under the chapter of bankruptcy sought by that debtor.

11 U.S.C. § 109(h) specifies that "an individual may not be a debtor under this title unless such individual has, during the 180–day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the

opportunities for available credit counseling and assisted such individual in performing a related budget analysis."

Hubbard, Posadas, O'Neal, Salazar and Beard failed to obtain pre-petition credit counseling. Moreover, their motions to extend the date by which credit counseling may be obtained are denied for the reasons set forth above. The debtors were not eligible to file bankruptcy. Accordingly, the filing of their voluntary petitions did not commence cases under chapter 13.

■■■ The Court recognizes that each of the putative debtors have now obtained credit counseling. However, Congress required that the credit counseling be obtained *before* the filing of the petition. Eligibility to be a chapter 13 debtor is determined as of the petition date. *In re Hatzenbuehler,* 282 B.R. 828 (Bankr. N.D.Tex.2002).

This Court and others have generally "dismissed" cases that were filed by ineligible debtors. Under the prior statute, "dismissal" had the same effect as "striking" a petition. Because "dismissal" of a case under the new Act may have substantially different implications than the "striking" of a petition, the Court must consider the appropriate remedy.

As set forth above, no "case" was commenced by the filing of these petitions. Because no case was commenced under § 301, there is no "case" to dismiss. The petitions in these five cases are stricken.

### Show Cause Why Funds Should Not be Returned

■■■ Pursuant to 11 U.S.C. § 329, the Court may order the return of any funds paid to debtors' counsel. In these cases, it appears that any fees charged by debtors' counsel (including any filing fees that were paid by the putative debtors) exceeded the reasonable value of the services received. Counsel—by failing to comply with the

plain wording of the statute and this Court's November 8, 2005 order—has failed to cause these individuals to commence cases under the Bankruptcy Code.

Within two business days, counsel shall file a pleading in which counsel shows cause why all fees and expenses should not immediately be returned to the debtors.