# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 14, 2011

Lyle W. Cayce
Clerk

No. 11-70025

DUANE EDWARD BUCK,

Petitioner–Appellant,

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-04-3965

Before DAVIS, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Duane Edward Buck was convicted in a Texas state court of capital murder and was sentenced to death. He is currently scheduled to be executed on September 15, 2011, and seeks a stay of that execution. He challenges two orders from the district court denying relief and seeks a certificate of appealability (COA) from this court, raising two issues. With regard to Buck's contention that reasonable jurists could debate the merits of his Equal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-70025

Protection and Due Process claims, we treat his application for a COA as an application for permission to file a successive habeas petition, and we DENY that application. We DENY a COA with regard to Buck's contention that reasonable jurists could debate the district court's disposition of a motion under Rule 60 of the Federal Rules of Civil Procedure to reopen an earlier judgment entered by the district court denying a petition for habeas corpus relief. We DENY his request for a stay of execution.

## I

The facts regarding Buck's conviction and sentencing are set forth in our previous opinion in this case,[1] and we recount them only briefly here. Buck was convicted by a jury in a Texas state court for murdering Kenneth Butler and Buck's former girlfriend, Debra Gardner, during the same criminal transaction. Buck entered Gardner's home, where his sister was visiting, inflicted serious gunshot wounds on his sister, fatally shot Butler, and then chased Gardner into the street as she and her children attempted to flee. He shot and killed Gardner in view of her two children. Buck has never contended that he was not the shooter.

During the punishment phase of his trial, Buck called Dr. Walter Quijano, a clinical psychologist, as an expert witness to testify on the likelihood of Buck's future dangerousness. On direct examination, Dr. Quijano testified that he had considered several statistical factors when evaluating Buck's potential for future dangerousness, including but not limited to age, sex, race, social economics, history of violence, and history of substance abuse. Regarding race, Dr. Quijano stated: "It's a sad commentary that minorities, Hispanics and black people, are over represented in the criminal justice system."

Dr. Quijano also testified that Buck suffered from dependent personality

---

[1] *Buck v. Thaler*, 345 F. App'x 923 (5th Cir. 2009).

disorder, which is characterized by an unhealthy reluctance to let go of past relationships, even to the point of violent or destructive behavior. According to Dr. Quijano, however, Buck was unlikely to commit future acts of violence because he would be unable to develop similar dependent relationships in jail. Basing his opinion on a combination of statistical, environmental, and clinical factors listed in his expert report, Dr. Quijano concluded that Buck would not likely pose any future danger to society if he were incarcerated.

On cross-examination, the prosecutor questioned Dr. Quijano regarding the several factors that he had mentioned during direct examination. At one point, the prosecutor — without objection from Buck's defense counsel — asked Dr. Quijano about his consideration of both race and sex as relevant factors in his future-dangerousness analysis, which led to the following exchange:

> Q:   You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that the race factor, black, increases the future dangerousness for various complicated reasons; is that correct?
>
> A:   Yes.

During closing arguments, Buck's defense counsel recalled for the jury Dr. Quijano's earlier testimony that there was "a very low probability that [Buck] would ever commit an act of violence." In rebuttal, the prosecution also referenced Dr. Quijano's testimony, stating — again without objection from defense counsel — that Dr. Quijano, "who had a lot of experience in the Texas Department of Corrections, . . . told you that there was a probability that [Buck] would commit future acts of violence." The prosecution made no reference whatsoever to Buck's race (African-American) or to Dr. Quijano's use of race as a statistical factor for determining future dangerousness.

Based on the jury's answers to the special issues submitted regarding punishment, Buck was sentenced to death in 1997. His conviction and sentence

were affirmed by the Texas Court of Criminal Appeals in 1998.[2]  Buck filed two state habeas petitions, the first of which the Texas Court of Criminal Appeals denied, and the second of which that court dismissed as an abuse of the writ. Buck pursued habeas relief in federal district court.  That court denied relief, and Buck sought a COA from this court.  We denied that application in 2009.[3]

Buck initiated the present proceedings in September 2011.  His most recent filings in the district court and our court recount that in June 2000, John Cornyn, who was then the Attorney General of the State of Texas, made a public statement, released to the press, that in six capital cases, including Buck's, questioning of an expert witness, Walter Quijano, at the sentencing stage in each of these cases had injected race into the proceedings.  Buck asserts that in this same public statement, the Attorney General announced that the State of Texas would not contest equal protection claims in federal courts in those six cases and would not assert any procedural bars to the assertion of such equal protection claims in federal habeas proceedings.  At that time, Buck's request for habeas relief in state court was pending.  He did not file his first petition for habeas corpus relief in federal district court until October 14, 2004.

With the exception of Buck's case, the Attorney General of Texas did not raise procedural bars in federal habeas proceedings to the assertion of claims regarding the testimony of Quijano, and each of the other five individuals received a new trial. When Buck challenged the evidence that was elicited from Quijano, and the State's use of it, in his federal habeas proceeding, the State contended that this claim was procedurally barred.  The State asserted that in Buck's case, unlike at least two of the other cases, Buck had called Quijano as a defense witness.  This, the State argued, distinguished Buck's case from those

---

[2] *Buck v. Thaler*, No. 72, 810 (Tex. Crim. App. Apr. 28, 1999).

[3] *Buck*, 345 F. App'x 923.

No. 11-70025

in which the State had called Quijano as a prosecution witness. The district court denied habeas relief. We denied his application for a COA.[4]

Buck now contends that the State made affirmative misrepresentations and failed to disclose that in at least two of the six cases identified by the Attorney General in 2000, those involving Carl Blue and John Alba, the defendants had called Quijano as a defense witness. Buck contends that the State has omitted any mention of the similarities between Buck's case and these two cases in which habeas relief was obtained, and that because of the State's misrepresentations and omissions, the district court and this court were misled.

In September of this year, 2011, Buck filed a motion in the district court seeking relief from the district court's July 24, 2006 order. After that motion was denied, Buck filed a motion to alter or amend the district court's September 9, 2011 order. The district court denied that motion on September 12, 2011. Buck now seeks relief in this court.

## II

Although Buck asserted his challenges in the district court citing Federal Rule of Civil Procedure 60, the Supreme Court in *Gonzalez v. Crosby* made clear that a Rule 60(b) motion is to be treated as a successive habeas petition if it asserts or reasserts claims that there was error in a state court conviction.[5] Buck's first issue in his application for a COA in this court is that we should reconsider whether reasonable jurists could debate whether the State violated the equal protection clause in inserting race into his trial during the sentencing phase. He asserts that in the proceedings leading to our prior decision, we were misled by the Attorney General's briefing and omissions in that briefing regarding the other five cases in which Quijano testified. He asks us to revisit

---

[4] *Id.*

[5] 545 U.S. 524, 530-31 (2005).

our prior disposition of the issues he raised regarding Quijano and to rule in his favor.

Buck is "assert[ing] [a] federal basis for relief from a state court's judgment of conviction."[6]  This constitutes a successive habeas petition even though he labeled the claim in district court as a Rule 60 motion.  The district court therefore had no jurisdiction to resolve Buck's claim because this court had not given Buck permission to file a successive habeas petition.[7]  However, treating the request for relief in this court as an application for permission to file a successive habeas petition, we deny that request.

A claim presented in a successive habeas that was not presented in a prior application "shall be dismissed unless the applicant shows that the claim relies on a new rule of constitutional law" or the that "factual predicate for the claim could not have been discovered previously through the exercise of due diligence . . . ."[8]  Buck's claim is not based on a new rule of constitutional law or newly discovered facts.  Buck makes no effort to show that the facts upon which he relied "could not have been discovered."  Because Buck has failed to meet the standard required for this court to consider a successive habeas corpus application, we have no discretion in the matter.

The existence of the other five cases in which Quijano testified was known to Buck at the time he first sought habeas relief in federal district court in 2004.  Similarly, at that time, the Attorney General's position that the procedural bar should not apply in the other five cases was a matter of public record, and new trials had been granted in at least four of the cases that had been identified, along with Buck's, in 2000.

---

[6] *See id.* at 530.

[7] 28 U.S.C. § 2244(b)(3)(A).

[8] *Id.* § 2244(b)(2).

No. 11-70025

When the State asserted the procedural bar in Buck's federal habeas proceeding filed in 2004, Buck certainly knew that in his case, the State was not following the same path that it had taken in the other cases regarding Quijano's testimony and the assertion of procedural bars. Indeed, one of the grounds on which he sought relief in his 2004 filing in federal district court was that he should receive relief just as the other defendants had.

Even if Buck had been able to show that the factual predicate for his claim could not have been discovered through the exercise of due diligence,[9] he would still be required to show that "the facts underlying his claim, if viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."[10] Buck has not pointed to anything that suggests he could meet this standard. He has not met the requirements for a successive habeas petition.

Under AEDPA, the role of the federal courts in reviewing state convictions, even for the death penalty, is very limited.[11] This role is even more narrow when the claims are raised for the first time in a successive federal habeas many years after the facts upon which the claims are based have occurred.[12] Buck has made no effort to meet the high hurdles AEDPA requires of such actions.

To the extent that Buck's contentions regarding the first issue identified in his application is not a successive habeas petition, but instead could be construed as cognizable under Rule 60, we would deny a COA for the reasons that we consider below with respect to Buck's second issue.

---

[9] *Id.* § 2244(b)(2)(B)(i).

[10] *Id.* § 2244(b)(2)(B)(ii)

[11] 28 U.S.C. § 2244(a)-(b)(2).

[12] *Id.*

No. 11-70025

## III

The second issue that Buck brings forth in his application to this court is his contention that reasonable jurists could debate the merits of his equal protection and due process claims because of the misleading record created by the Attorney General's alleged misrepresentations and omissions. We consider this to be a contention that there was "some defect in the integrity of the federal habeas proceedings."[13]

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to obtain a COA to appeal a district court's denial of his habeas petition.[14] Despite this court's earlier holding in *Dunn v. Cockrell*,[15] a COA is generally required to appeal the denial of a Rule 60(b) motion in a habeas proceeding. We have read *Dunn*'s exception narrowly, holding that a COA is not required to appeal the denial of a Rule 60(b) motion "only when the purpose of the motion is to reinstate appellate jurisdiction over the original denial of habeas relief."[16] Buck's Rule 60(b) motion is not for the purpose of reinstating appellate jurisdiction over the original denial of habeas relief. Therefore, Buck is required to obtain a COA before appealing the district court's denial of his Rule 60(b) motion. Buck is also required to obtain a COA before appealing the district court's denial of his Rule 60(d) motion.[17]

We may only grant a COA if the petitioner makes "a substantial showing

---

[13] *Gonzalez*, 545 U.S. at 532.

[14] 28 U.S.C. § 2253(c)(1).

[15] 302 F.3d 491, 492 (5th Cir. 2002).

[16] *Ochoa Canales v. Quarterman*, 507 F.3d 884, 888 (5th Cir. 2007); *see also Williams v. Quarterman*, 293 F. App'x 298, 315 (5th Cir. 2008).

[17] *Jackson v. Thaler*, 348 F. App'x 29, 31-32, 34-35 (5th Cir. 2009).

of the denial of a constitutional right."[18] "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[19] In making this determination, we conduct a "threshold inquiry" that involves "an overview of the claims in the habeas petition and a general assessment of their merits" but it "does not require full consideration of the factual or legal bases adduced in support of the claims."[20] In death-penalty cases, we resolve in favor of the petitioner any doubts whether a COA should issue.[21] In this case, however, we have no doubts. Buck has not demonstrated that jurists of reason could disagree with the district court's resolution of the issues presented in Buck's latest motions.

We first consider the district court's denial of Buck's motion for relief from judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure. Buck raised two grounds in that motion. The first was based on Rule 60(b)(6), which allows a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."[22] The district court denied the motion as untimely because it was not brought within a reasonable time as required by Rule 60(c)(1),[23] and Buck did not show

[18] 28 U.S.C. § 2253(c)(2).

[19] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

[20] *Id.* at 336.

[21] *Id.* at 460.

[22] FED. R. CIV. P. 60(b)(6).

[23] FED. R. CIV. P. 60(c)(1).

good cause for the delay.[24]  Denial of a Rule 60(b) motion is reviewed for an abuse of discretion.[25]  A court's determination of the timeliness of such a motion is also reviewed for abuse of discretion.[26]

We hold that the district court did not abuse its discretion in determining that Buck's Rule 60(b) motion was not brought within a reasonable time.  He did not bring the motion for over five years after the district court's entry of final judgment and more than a year after the Supreme Court denied certiorari.  Such an excessive delay is not reasonable under the circumstances of this case.  Buck has not presented any facts or even arguments that would constitute good cause for the delay.

Buck was fully aware of the other five cases on which he now bases his request for relief.  In his briefing in our court in 2006, Buck argued at some length that he should be accorded the same relief as the other five defendants.  For example, he asserted:

> In Texas, in at least five other cases, individuals raise identical habeas claims as Appellant, and in no case did the federal courts find those claims procedurally default[ed].  The only difference is that in each of those cases, the Respondent conceded error.  This case should not be any different.

At another juncture in his briefing to this court in 2006, Buck noted, "the Respondent, unlike the instant case, expressly waived exhaustion and procedural default regarding issues relating to Quijano."

The only additional argument that Buck now makes, five years later, is

---

[24] *See In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) ("Motions under Rule 60(b) must be made 'within a reasonable time,' unless good cause can be shown for the delay." (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 (5th Cir.1985)).

[25] *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010), *cert. denied*, 131 S.Ct. 2992 (2011).

[26] *Lindy Investments III v. Shakertown 1992 Inc.*, 360 F. App'x. 510, 512 (5th Cir. 2010); *see also Matter of Al Copeland Enterprises, Inc.*, 153 F.3d 268, 271–72 (5th Cir. 1998).

that in two of the five cases, those involving Blue and Alba, the defendants rather than the State, called Quijano as a witness. These facts were ascertainable many years ago. Publicly available court opinions that Buck has attached to his filings in the district court and in this court reflect that both Blue and Alba received new sentencing hearings in 2000. We note that Buck's most recent claim in district court was not that Buck received disparate treatment as compared to Blue and Alba. He expressly disclaimed such an intention in his submission to the district court, saying, "Mr. Buck does not assert the second equal protection violation [that he was treated disparately from Blue and Alba] as a substantive claim for habeas corpus relief. He mentions it only to emphasize the extraordinary nature of the circumstances warranting relief from the judgment."

We conclude that Buck has not presented the extraordinary circumstances needed to justify the grant of a Rule 60(b)(6) motion.[27] The concept that asking a jury to find future dangerousness based on one's race violates the Equal Protection clause is certainly not a new or novel one. Yet, Buck did not raise any argument to this effect in his direct appeal to the Texas Court of Criminal Appeals or in his first state court application for habeas relief. It was only after the Attorney General confessed error in another case in which Quijano had appeared as an expert witness on future dangerousness that Buck, for the first time, raised the issue in a second application for habeas relief to the Texas Court of Criminal Appeals in 2002. That court denied the application as an abuse of the writ. These circumstances are to us indistinguishable from those before the Supreme Court in *Gonzalez*.[28] The defendant in that case had failed to raise a

---

[27] *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (explaining that "our cases have required a movant seeking relief under Rule 60(b)(6) to show 'extraordinary circumstances' justifying the re-opening of a final judgment").

[28] 545 U.S. 524, 537-38 (2005).

question regarding the statute of limitations under AEDPA. The Supreme Court's subsequent decision in *Artuz* was a change in the law for some circuits and made clear that the district court in Gonzalez's case had incorrectly applied limitations.[29] The Supreme Court held that "[t]he change in the law worked by *Artuz* is all the less extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue."[30] The Court likened Gonzalez's circumstance to that of a defendant who freely and voluntarily decided not to appeal a particular issue, "although the favorable ruling in the companion case made it appear mistaken in hindsight."[31]

We have a similar situation before us. Buck was free to raise equal protection arguments regarding the State's use of Quijano's testimony in his state court appeal and initial state court habeas application, just as another Texas defendant had raised the issue with success. Buck did not raise the issue. It was only after the Attorney General confessed error in another case that Buck filed a second state court habeas petition that was denied, on independently adequate state procedural grounds. The Attorney General's confession of error is not a change in the law as was *Artuz*. It was a change in position as to whether well-settled law applied under particular circumstances. Buck now attempts to enforce statements made by the Attorney General, wholly outside of any judicial proceeding involving Buck, when after further review, the Attorney General changed his analysis of how well-settled law applied in Buck's case.

Buck also sought relief from the district court pursuant to Rule 60(d)(3), arguing that the Attorney General committed fraud on the court. Rule 60(d)

---

[29] 531 U.S. 4 (2000).

[30] *Gonzalez* 545 U.S. at 537.

[31] *Id*. at 538.

provides that Rule 60 does not limit a court's power to set aside a judgment for fraud on the court.[32]  Fraud on the court allows the district court to set aside a judgment without a strict time bar.[33]  Whether relief should be granted based on fraud on the court under Rule 60(d) is committed to the sound discretion of the district court, and district courts are given wide discretion in denying such motions.[34]

Buck argues that the office of the Attorney General committed fraud on the court by initially representing that it would not assert any procedural defenses against Buck but then subsequently failing to honor this representation when it asserted a procedural bar in the federal habeas proceedings.  Buck also contends that the State misrepresented in its briefing regarding Buck's original federal habeas petition that in each of the other five cases in which Quijano testified, Quijano had been called by the prosecutor as a prosecution witness when in fact, both Blue and Alba had called Quijano as a defense expert.

Our court has explained that "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court."[35]  Under this definition, the district court acted within its discretion in concluding that the Attorney General did not commit fraud on the court.  The Attorney General's actions, even taking Buck's view of them as true, in no way resemble

---

[32] FED. R. CIV. P. 60(d).

[33] *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009).

[34] *Apotex Corp. v. Merck & Co., Inc.*, 507 F.3d 1357, 1361 (Fed. Cir. 2007); s*ee also Jackson v. Thaler*, 348 F. App'x 29, 34 n.6 (5th Cir. 2009) ("Rule 60(d)(3) contains the "fraud on the court" provision that was part of the penultimate sentence of Rule 60(b) before its 2007 revision.  The change was stylistic only, *see* Fed.R.Civ.P. 60, Advisory Committee Notes, 2007 Amendments, and thus interpretations of the prior "fraud upon the court" language apply equally to the new Rule 60(d)(3).").

[35] *Rozier v. Fort Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978).

bribery of a judge or jurors, the fabrication of evidence, or rise to the level of egregiousness that constitutes fraud on the court. Additionally, as the district court noted, Buck has not identified a legal basis for the claim that the Attorney General's statements created legally enforceable rights or later precluded him from distinguishing Buck's case from the other cases.

Buck contends that in granting relief to Blue and Alba, the courts in those cases had determined that there were constitutional violations in circumstances indistinguishable from his case. Buck appears to implicitly argue that if the district court and this court had known the similarities between Buck's case and these cases and had known that the other courts had found constitutional violations, the district court and this court would have been constrained to conclude that reasonable jurists could not only debate whether the circumstances of "Buck's case gave rise to a constitutional issue, several courts, including this Court, had already found that it did." However, this court was involved only in Alba's case, and we did not hold that there was constitutional error. We vacated based on the State's confession of error in that case. Buck argues that we had an independent duty to ascertain whether there was a constitutional violation notwithstanding the State's confession of error. We disagree. Significant questions regarding the continued existence of a live case or controversy would be presented if this court were to ignore the parties' withdrawal of matters in dispute. In Blue's case, the district court concluded that there had been a constitutional violation as a result of Quijano's testimony but then immediately noted the State's confession of error, observing "nothing more needs to be said on this point." The district court's reasoning in a particular case applying the law to the facts before it is not binding on another district court or this court. In any event, it is difficult to divorce the State's confession of error from the mix in Blue's case.

The important point is that the failure of the State to apprise the district court or this court that Blue and Alba had called Quijano as their own witness in their respective trials and that the State had subsequently confessed error in each of those cases did not amount to fraud on the court. This court examined the record in Buck's case, applied applicable law, and concluded that were we to reach the merits of the issue of whether Buck's constitutional rights were violated by the State's questioning of Quijano and the State's closing argument, we would conclude that Buck could not make a substantial showing of the deprivation of a constitutional right.[36] We said:

> [W]e are satisfied that Buck's claim would fail on the merits. It was Buck, not the prosecution, who introduced Dr. Quijano as an expert witness and then solicited testimony from him regarding the use of race as one of several statistical factors for predicting future dangerousness. Buck cannot now claim surprise at the opinions that Dr. Quijano expressed. Indeed, in the punishment phase of the trial, it was Buck's defense counsel who argued for the admission of Dr. Quijano's expert report into evidence, despite language in the report suggesting that Buck's race is one factor that might argue in favor of a finding of future dangerousness. Buck and his counsel presumably made this strategic determination because they believed that the potential benefit of Dr. Quijano's ultimate conclusion — that Buck was not likely to pose any future danger to society if he were incarcerated — outweighed any risk of exposing the jury to Dr. Quijano's less favorable opinions. Despite Buck's having opened the door to this testimony during his direct examination, the prosecution referenced the race factor only once during cross-examination, and never mentioned it at all during closing arguments. Even if we were to consider Buck's petition on the merits, we would conclude that it fails to demonstrate a substantial showing of the deprivation of a constitutional right.[37]

Buck has offered no basis on which we can disregard our prior holding on this

---

[36] *Buck v. Thaler*, 345 F. App'x 923, 930 (5th Cir. 2009).

[37] *Id.*

matter.

## IV

Finally, Buck requests a COA for the district court's denial of his motion to alter judgment under Rule 59(e) of the Federal Rules of Civil Procedure. Like a Rule 60 motion, Buck must obtain a COA to appeal the denial of a Rule 59(e) motion.[38] Buck asserts the district court relied on misrepresentations made by Respondent in denying his Rule 60 motion. We review the district court's denial of a Rule 59(e) motion for an abuse of discretion.[39] A motion to alter or amend under Rule 59(e) must clearly establish either a manifest error of law, present newly discovered evidence, or rely on an intervening change in controlling law.[40] In denying Buck's motion, the district court rejected any claims that it relied on Respondent's alleged misrepresentations in reaching a decision. Instead, the district court stated its denial was based on the record and controlling law. Buck's Rule 59(e) motion fails to cite a manifest error of law, present newly discovered evidence, nor does it rely on an intervening change in controlling law. Because we conclude that jurists of reason could not disagree with the district court's resolution of Buck's Rule 59(e) motion, we deny his COA.[41]

\* \* \*

We treat Buck's request for a COA on the issue of whether his due process and equal protection claims should be reconsidered as an application for permission to file a successive habeas petition, and that application is DENIED.

---

[38] *Williams v. Quarterman*, 293 F. App'x 298, 315 (5th Cir. 2008).

[39] *Schiller v. Physicians Resource Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

[40] *Id.* at 567.

[41] We are provided with no explanation for why the State declined to act consistently with its Attorney General's public announcement with respect to petitioner Buck. But given the procedural rules we must follow, even if we were inclined to do so we have no authority to grant Buck relief.

No. 11-70025

We DENY Buck's application for a COA as to his contention that reasonable jurists could debate the district court's disposition of his motion to reconsider judgment.  We DENY the request for a stay of execution.