# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 20, 2015

Lyle W. Cayce
Clerk

No. 14-70030

DUANE EDWARD BUCK,

Petitioner–Appellant,

versus

WILLIAM STEPHENS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CV-3965

Before SMITH, OWEN, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Duane Buck seeks a certificate of appealability ("COA") to challenge the denial of his motion for reconsideration, in which he sought to raise ineffective assistance of counsel ("IAC") in seeking federal habeas corpus relief. Because he has not shown extraordinary circumstances that would permit relief under

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-70030

Federal Rule of Civil Procedure 60(b)(6), we deny the application for a COA.

I.

This is Buck's third trip to the Fifth Circuit. More detailed explanations of the facts and procedural history can be found in *Buck v. Thaler*, 345 F. App'x 923 (5th Cir. 2009) (per curiam), and *Buck v. Thaler*, 452 F. App'x 423 (5th Cir. 2011) (per curiam). We recite only what is relevant to this request for a COA.

In July 1995, Buck murdered his ex-girlfriend Debra Gardner and her friend Kenneth Butler. Buck was arrested at the scene, and police found the murder weapons in the trunk of his car. Two witnesses identified him as the shooter. Buck laughed during and after the arrest and stated to one officer that "[t]he bitch got what she deserved."

Buck was convicted of capital murder for the deaths. During the penalty phase, the state presented evidence that Buck would likely remain dangerous. That evidence included his criminal history, his violent conduct, and his demeanor during and after the arrest.

Buck called Dr. Walter Quijano, a clinical psychologist, as an expert witness to testify regarding future dangerousness. Buck's lawyer asked Quijano what factors he would look at to determine whether an inmate would engage in future acts of violence. Quijano explained several, including age, sex, race, social economics, and substance abuse. For example, he testified that advanced age and increased wealth correlated with a decline in the likelihood of committing future violent acts. On race, he gave a one-sentence explanation: "It's a sad commentary that minorities, Hispanics and black people, are over represented in the Criminal Justice System." That matched a statement included in Quijano's expert report, which was introduced as evidence.

During cross-examination, the prosecution elicited one more comment on

2

race from Quijano:  Question:  "You have determined that the sex factor, that a male is more violent than a female because that's just the way it is, and that the race factor, black, increases the future dangerousness for various complicated reasons; is that correct?"  Answer:  "Yes."  During closing arguments, the prosecution referenced Quijano's testimony generally and specifically noted that he had said that, although Buck was in the low range for a probability of committing future violent acts, the probability did exist.  The prosecution did not reference Buck's race or Quijano's use of race.

The jury unanimously found beyond a reasonable doubt that there was a probability Buck would commit criminal acts of violence that would be a continuing threat to society.  It further found that there were not sufficient mitigating circumstances to justify a life sentence.  The court sentenced Buck to death, and the Texas Court of Criminal Appeals ("TCCA") affirmed.

Buck filed his first state habeas application in 1997; it contained no IAC claim or any other challenge based on Quijano's testimony.  In 2000, however, the Texas Attorney General ("AG") admitted to the Supreme Court in *Saldano v. Texas*, 530 U.S. 1212 (2000), that the state had erred in calling Quijano as a witness and having him testify that the defendant's race increased the likelihood of future dangerousness.  Shortly after the Court vacated and remanded *Saldano* on that confession of error, the AG publicly identified eight other cases involving racial testimony by Quijano, six of which the AG said were similar to Saldano's case; one of those was Buck's.  Buck contends that Texas "promised to concede constitutional error and waive its procedural defenses" in his case so that he could get resentenced without the race-related testimony.[1]

---

[1] It has never been established that the AG's office promised not to raise procedural defenses in Buck's case.  The record contains a news release by the AG's office stating that a post-*Saldano* audit had revealed "eight more cases in which testimony was offered by Dr. Quijano that race should be a factor for the jury to consider in making its determination

No. 14-70030

In 2002, while his first state habeas petition was pending, Buck filed a second petition that challenged Quijano's testimony on several grounds, including IAC. The TCCA ultimately denied the first habeas petition and dismissed the second as an abuse of the writ.

In 2004, Buck filed a federal habeas petition raising a litany of challenges to his sentence, including IAC. The court denied relief on that claim because Buck had not raised IAC on direct appeal or in his original state habeas petition. He had raised it in his second state habeas petition, but the TCCA dismissed it as an abuse of the writ, so it was procedurally defaulted. Buck sought a COA from this court on only one issue: "Was he deprived of due process or equal protection by the prosecution's reference to testimony from Buck's own penalty-phase expert witness . . . ?" *Buck*, 345 F. App'x at 924. We concluded that the claim was procedurally barred and meritless. *Id.* at 930.

After the state set an execution date of September 15, 2011, Buck moved for relief from the earlier district-court judgment under Federal Rule of Civil Procedure 60(b)(6), claiming that the state's failure to admit error and waive defenses was extraordinary and merited relief. The motion also asked for relief under Rule 60(d)(3), alleging that the AG had committed fraud on the court.

---

about the sentence in a capital murder trial," of which six were similar to *Saldano*. The same release stated that the AG's office "sent letters to opposing counsel and to the local prosecutors involved advising them of [the AG's] investigation." But we have found no statement by the AG in the record in which he confessed error relating to Buck's case and promised not to raise procedural defenses.

The record contains a *Houston Chronicle* article from 2000 that paraphrases the AG's spokesperson as saying, "If the attorneys amend their appeals currently pending in federal court to include objections to Quijano's testimony, the attorney general will not object." The spokesperson is quoted as representing that cases still with the district attorney's offices "will be handled in a similar manner as the Saldano case." A *New York Times* article went further, stating, "[The AG's] staff has notified defense lawyers representing the six inmates that his office will not object if they seek to overturn the death sentences based on Mr. Quijano's testimony." Because it does not change the outcome of this appeal, we need not explore whether such a promise was made or how explicit it was.

No. 14-70030

The district court denied the motion and, three days later, Buck filed a motion to amend the judgment under Rule 59(e), claiming that the AG had made material misrepresentations and omissions in opposing the earlier motion for relief. The court denied that motion as well. We declined to permit a successive habeas petition or issue a COA. *Buck*, 452 F. App'x at 433.

The Supreme Court stayed Buck's execution to consider his petition for writ of certiorari. It ultimately denied the petition, accompanied by a statement respecting that denial and a dissent. *Buck v. Thaler*, 132 S. Ct. 32, 32–35 (2011) (Alito, J., respecting the denial of certiorari); *id.* at 35–38 (Sotomayor, J., dissenting from the denial of certiorari).

In 2013, Buck filed another state habeas petition. The trial court concluded that it was a subsequent petition and referred it to the TCCA. While that petition was pending, the Supreme Court decided *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), holding that Texas's procedural regime rendered it almost impossible to raise IAC claims on direct appeal, making the scheme similar to the one in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). The Court therefore held that the *Martinez* exception applied in Texas: The lack of effective counsel during initial state collateral-review proceedings could excuse a procedural default on an IAC claim. *Trevino*, 133 S. Ct. at 1921.

The TCCA dismissed the petition as an abuse of the writ. *Ex parte Buck*, 418 S.W.3d 98 (Tex. Crim. App. 2013). Three judges dissented, concluding that Buck had made out a potentially meritorious case of IAC relating to his attorney's alleged failure adequately to investigate and present mitigating evidence. *Id.* at 98–114 (Alcala, J., dissenting).

In January 2014, Buck again filed for Rule 60(b)(6) relief from judgment in his federal habeas case. He focused solely on his IAC claim, contending that counsel was ineffective for introducing Quijano and that his case was

5

No. 14-70030

sufficiently extraordinary to justify relief under Rule 60(b)(6). The district court denied the motion, holding that Buck's case did not have the extraordinary circumstances required for Rule 60(b)(6). It also held that Buck had failed to make out an IAC claim, establishing deficient performance but not prejudice. Within a month of that denial, Buck again moved for relief under Rule 60(b)(6), essentially disagreeing with the district court's disposition of the issues. On March 11, 2015, the district court denied that motion as well and declined to issue a COA.

## II.

To obtain a COA, Buck must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). On application for a COA, we engage in "an overview of the claims in the habeas petition and a general assessment of their merits" but do not engage in "a full consideration of the factual or legal bases adduced in support of the claims," asking only whether the district court's resolution of the claim "was debatable among jurists of reason." *Miller-El*, 537 U.S. at 322.

The district court denied the motion for a procedural reason, namely, Buck's failure to show extraordinary circumstances justifying relief under Rule 60(b)(6). We therefore must deny a COA if Buck fails to establish both (1) that jurists of reason would find debatable "whether the petition states a valid claim of the denial of a constitutional right" and (2) that those jurists "would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 429 U.S. 473, 484 (2000).

## III.

Regarding the procedural bar, for a Rule 60(b)(6) motion in this posture not to be itself a successive habeas petition, the litigant "must not be challenging a prior merits-based ruling." *Balentine v. Thaler*, 626 F.3d 842,

6

No. 14-70030

846 (5th Cir. 2010). Instead, he must be challenging a previous ruling—such as procedural default or a statute-of-limitations bar—that precluded a merits determination. *Id.* at 846–47. The district court initially denied Buck's IAC claim because the TCCA's abuse-of-the-writ dismissal was an adequate and independent state ground for denying relief, so Buck's motion satisfies that requirement.

To obtain relief under Rule 60(b)(6), Buck must show "extraordinary circumstances," *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005), which "will rarely occur in the habeas context," *id.* at 535. There is little guidance as to what constitutes "extraordinary circumstances," but we have recognized that a change in a decisional law does not qualify, and we have cited with approval district-court decisions holding other circumstances not extraordinary as well, including IAC. *See Williams v. Thaler*, 602 F.3d 291, 312 (5th Cir. 2010).

Buck contends that eight equitable factors from *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. Unit A Jan. 1981), are the proper means for evaluating a Rule 60(b) motion in a habeas case.[2] We have declined to answer whether *Seven Elves* sets the standard for a Rule 60(b)(6) motion in habeas proceedings. *See Diaz v. Stephens*, 731 F.3d 370, 376–77 (5th Cir. 2013). We need not answer it now because Buck has not made out even a minimal showing that his case is exceptional.

---

[2] Those factors are "(1) [t]hat final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack." *Seven Elves*, 635 F.2d at 402.

No. 14-70030

The January 2014 motion contains eleven facts, reurged in the COA application, that Buck says make the case extraordinary:

1. Mr. Buck's trial attorney knowingly presented expert testimony to the sentencing jury that Mr. Buck's race made him more likely to be a future danger;

2. Although required to act as gate-keeper to prevent unreliable expert opinions from reaching and influencing a jury, see Tex. R. Evid. 705(c); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992), the trial court qualified Dr. Quijano as an expert on predictions of future dangerousness, allowed him to present race based opinion testimony to Mr. Buck's capital sentencing jury, and admitted Dr. Quijano's excludable hearsay report linking race to dangerousness;

3. The trial prosecutor intentionally elicited Dr. Quijano's testimony that Mr. Buck's race made him more likely to be a future danger on cross-examination, vouched for him as an "expert" in closing, and asked the jury to rely on Dr. Quijano's testimony to answer the future dangerousness special issue in the State's favor;

4. Mr. Buck's state habeas counsel did not challenge trial counsel's introduction of this false and offensive testimony — or Texas's reliance on it — in Mr. Buck's initial state habeas application;

5. The Texas Attorney General conceded constitutional error in Mr. Buck's case and promised to ensure that he received a new sentencing, but reneged on that promise after deciding that the introduction of the offensive testimony was trial counsel's fault;

6. This Court ruled that federal review of Mr. Buck's trial counsel ineffectiveness claim was foreclosed by state habeas counsel's failure to raise and litigate the issue in Mr. Buck's initial state habeas petition, relying on *Coleman*, which has subsequently been modified by *Martinez* and *Trevino*;

7. The Fifth Circuit held Mr. Buck's trial counsel responsible for the introduction of Dr. Quijano's testimony linking Mr. Buck's race to his likelihood of future dangerousness;

8. Three Supreme Court Justices concluded that trial counsel was at fault for the introduction of Dr. Quijano's testimony;

9. Three Judges of the CCA found that "because [Mr. Buck's] initial habeas counsel failed to include any claims related to Quijano's testimony in his original [state habeas] application, no court, state or

8

federal, has ever considered the merits of those claims," *Buck*, 2013 WL 6081001, at *5;

10. Mr. Buck's case is the only one in which Texas has broken its promise to waive procedural defenses and concede error, leaving Mr. Buck as the only individual in Texas facing execution without having been afforded a fair and unbiased sentencing hearing; and

11. Martinez and Trevino now allow for federal court review of "substantial" defaulted claims of trial counsel ineffectiveness.

Initial examination of those facts reveals that they are not extraordinary at all in the habeas context. Numbers 1–3, 7, and 8 are just variations on the merits of Buck's IAC claim, which is at least unremarkable as far as IAC claims go. Buck's IAC claim is not so different in kind or degree from other disagreements over trial strategy between lawyer and client that it counts as an exceptional case. Nor are IAC claims as a class extraordinary under Rule 60(b)(6). The Court warned in *Gonzalez*, 545 U.S. at 536, that extraordinary circumstances will rarely be present in the habeas context.

The fourth and ninth extraordinary facts merely point out that Buck's IAC claim was procedurally defaulted and did not get a merits determination. That is not an extraordinary circumstance in the habeas context; it is the nature of procedural defaults that many potentially viable claims will never advance to a merits determination. No jurists of reason would expand the definition of "extraordinary" to reach all procedurally defaulted IAC claims.

The sixth and eleventh facts relate to Buck's notion that *Trevino* and *Martinez* changed the law regarding procedural defaults in IAC claims in a way that could have excused his procedural default. *Martinez*, however, "was simply a change in decisional law" that is not an extraordinary circumstance under Rule 60(b)(6), and "*Trevino*'s recent application of *Martinez* to Texas cases does not change that conclusion in any way." *Diaz*, 731 F.3d at 376 (internal quotation marks omitted).

No. 14-70030

Those facts plainly fail to make even a plausible argument that Buck's is the extraordinary case that satisfies Rule 60(b)(6). He has repeatedly asserted, however, that his case is special because of the *Saldano*-related statements by the AG. Buck contends the AG conceded that Quijano's testimony was unconstitutional but reneged on a promise to resentence Buck (fact five), despite Texas's following through in other cases involving Quijano (fact ten).

Even if the AG initially indicated to Buck that he would be resentenced—a fact that has never been adequately established, *see* note 1, *supra*—his decision not to follow through is not extraordinary. The broken-promise element to this case makes it odd and factually unusual, but extraordinary circumstances are not merely found on the spectrum of common circumstances to unique circumstances. And they must be extraordinary circumstances "justifying relief from the judgment." *Gonzalez*, 545 U.S. at 537. Buck has not shown why the alleged reneging would justify relief from the judgment. For example, he has not shown that he relied on the alleged promise to his detriment.

Nor is it extraordinary that the AG confessed error and waived procedural bars in other cases and not in Buck's. We have previously rejected the notion that some concept of "intra-court comity" requires the state to waive procedural defenses in similar cases. *See Buck*, 345 F. App'x at 929. Even assuming *arguendo* that the other cases at issue are materially similar to Buck's (which the state disputes), it can hardly be extraordinary that the state chose different litigation strategies between the two cases. Jurists of reason would not debate that Buck has failed to show extraordinary circumstances justifying relief.

10

No. 14-70030

Buck has not demonstrated that jurists of reason would debate whether his case is exceptional under Rule 60(b)(6).  The request for a COA is DENIED.